# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLA M. FREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-17-140-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Okla M. Frey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 150). She has an eighth grade education and has worked as a nurse assistant (Tr. 53, 175). The claimant alleges she has been unable to work since May 15, 2013, due to congestive heart failure, a bad lower back, obesity, high blood pressure, nerve damage, arthritis, obsessive compulsive disorder, and bipolar disorder (Tr. 150, 174).

## Procedural History

On May 29, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 150-56). Her application was denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 23, 2016 (Tr. 19-34). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work with occasional climbing ramps/stairs, stooping, crouching, balancing, and crawling, and never climbing ladders, ropes, or scaffolds (Tr. 23). The ALJ further found that the claimant could understand, remember, and carry out simple instructions, and could interact appropriately on a superficial work basis with co-workers and supervisors, but could not

interact with the public (Tr. 23). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, machine operator, production assembler, and clerical mailer (Tr. 32-33).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) analyze the opinions of nurse practitioner Jacqueline Rollins, and (ii) assess her subjective statements. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, obesity, peripheral neuropathy, hypertension, bipolar disorder, and anxiety (Tr. 21). The relevant medical records reveal that Jacqueline Rollins, a nurse practitioner at TLC Family Clinic, regularly treated the claimant from October 2013 through at least June 2015, the last treatment note in the record (Tr. 290-321, 325-58, 365-70). Her diagnoses included anxiety, hypertension, morbid obesity, lumbago, depressive disorder, peripheral neuropathy, edema, and generalized osteoarthritis (Tr. 243-76, 327-29, 351-59). Ms. Rollins's treatment notes reflect that the claimant's anxiety and depression waxed and waned, and that her psychiatric examinations were consistently within normal limits (Tr. 292, 297, 307, 312, 315, 318, 321, 340). Ms. Rollins noted the claimant's mood was anxious on three occasions (Tr. 301, 349, 369). As to the claimant's pain, Ms. Rollins' treatment notes reflect that the claimant's pain also waxed and waned, but that she consistently reported some degree of low back pain (Tr. 290, 295, 299, 305, 310, 314, 317,

338, 347, 365). Ms. Rollins frequently noted on physical examination that the claimant had an "arthralgic" gait (Tr. 292, 297, 301, 340, 349, 368). At follow-up appointments in November 2013, December 2013, and April 2014, Ms. Rollins found that the claimant's lumbar spine was stable, but revealed straightening and limited range of motion in flexion and extension (Tr. 301, 315, 318). On May 22, 2014, Ms. Rollins wrote a letter indicating that the claimant was under her care, and was unable to work due to her medical conditions, including severe anxiety, depression, edema, neuropathy, and hypertension (Tr. 362). On June 15, 2015, Ms. Rollins wrote another letter indicating that the claimant was "unable to work at this time related to medical issues." (Tr. 360).

On August 3, 2011, Theresa Horton, Ph.D., conducted a psychological consultative examination of the claimant in connection with a prior application (Tr. 271-75). She diagnosed the claimant with bipolar disorder, type I, current episode is mixed; posttraumatic stress disorder, chronic; and personality disorder not otherwise specified (Tr. 274). In her summary and prognosis, Dr. Horton stated that the claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, but would likely require some prompting to stay on task, and did not appear capable of persisting on task for two-hour periods (Tr. 274). Additionally, she stated that the claimant did not appear capable of adequate social and emotional adjustment into occupational settings, and likely did not do well in many social settings (Tr. 274).

Dr. Terry Kilgore conducted a physical consultative examination of the claimant on August 2, 2011, also in connection with a prior application (Tr. 261-69). Dr. Kilgore's

impression included, *inter alia*, massive obesity, shortness of breath, hypertension, chronic knee pain, and chronic back pain (Tr. 264).

On April 24, 2013, Dr. Horton performed a second psychological consultative examination of the claimant (Tr. 285-89). She noted the claimant's mood was predominantly depressed and elevated, and that her affect was congruent and expressive (Tr. 287). She diagnosed the claimant with bipolar disorder, type I, most recent episode was mixed; posttraumatic stress disorder, chronic, mild to moderate; and personality disorder not otherwise specified (Tr. 288). In her summary and prognosis, Dr. Horton stated that the claimant appeared capable of understanding, remembering and managing mostly simple tasks and only somewhat more complex instructions and tasks, but would likely have increased difficulty doing so while under the pressure of an employment setting (Tr. 274). Additionally, she stated that the claimant likely had adequate social/emotional adjustment into social settings (Tr. 288).

On April 30, 2013, Dr. Kilgore performed a second physical consultative examination of the claimant (Tr. 277-83). Dr. Kilgore found the claimant had reduced range of motion in her lumbosacral spine with tenderness, but no severe spasms, and reduced range of motion in her neck (Tr. 263-66). The claimant's ankles were unremarkable, and her knees revealed mild crepitance without significant swelling or redness (Tr. 263). As to her gait, Dr. Kilgore noted it was stable, but slightly slow, and that the claimant did not use an assistive device for ambulation (Tr. 279). His impression included, *inter alia*, massive obesity, chronic back pain, probable early degenerative arthritis of the knees, hypertension, and shortness of breath secondary to obesity (Tr. 279).

On August 18, 2014, state agency psychologist Burnard Pearce reviewed the record and found the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public, and was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 69-71). In his written comments, Dr. Pearce explained that claimant could understand, remember, and carry out simple instructions and tasks in a work setting, and could relate to co-workers and supervisors on a superficial work basis, but could not relate to the general public (Tr. 70-71). These findings were affirmed on review (Tr. 79-85).

State agency physician Dr. Karl Boatman reviewed the record on August 18, 2014, and found that the claimant could perform sedentary work with frequent balancing and crawling; occasional stooping, crouching, and climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds (Tr. 68). These findings were also affirmed on review (Tr. 81-83).

At the administrative hearing, the claimant testified that she injured her back at work in 1998 (Tr. 44). She further testified that her low back pain radiates down her legs and is constant (Tr. 45). As to her knees, the claimant stated that if she "get[s] up and down constantly" her knees will swell so much that she is incapable of walking, and that this amount of swelling occurs about once per month (Tr. 46). The claimant also stated that she has chronic kidney disease that causes pain and further limits her ability to stand and

walk (Tr. 43). Regarding her mental impairments, the claimant testified that she takes medication for obsessive compulsive disorder, bipolar disorder, attention deficit disorder, and severe depression and anxiety, and has received inpatient mental health care on three occasions (Tr. 46-49). She stated that she gets scared and nervous when she is around people, and that her medications are effective for her mood swings and obsessive disorder (Tr. 48, 51). In a typical day, the claimant tries to keep her house up, but she otherwise sits at home and doesn't really do "much of anything." (Tr. 50).

In her written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical record. In discussing the opinion evidence, she gave great weight to the state agency physician and psychologist opinions (Tr. 32). She gave little weight to Ms. Rollins' opinion that the claimant was unable to work, finding her progress notes "totally fail" to support an inability to work (Tr. 32). The ALJ summarized the opinions of Dr. Kilgore and Dr. Horton, but provided no analysis and did not assign them any particular weight (Tr. 25-26). In discussing the claimant's subjective statements, the ALJ concluded that the claimant was not entirely credible (Tr. 24). In support, she found that: (i) the claimant's daily activities were not as limited as one would expect given her complaints, (ii) her anxiety and depression improved with medication, and (iii) she attributed her low back pain to "working on a house to move in to." (Tr. 31).

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Rollins herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects"

under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006

WL 2329939, at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at

*6 ("[T]he adjudicator generally should explain the weight given to opinions from these

'other sources,' or otherwise ensure that the discussion of the evidence in the determination

or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning,

when such opinions may have an effect on the outcome of the case."). The factors for

evaluating opinion evidence from "other sources" include: (i) the length of the relationship

and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the

extent the source provides relevant supporting evidence; (iv) how well the source's opinion

is explained; (v) whether claimant's impairment is related to a source's specialty or area of

expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p,

2006 WL 2329939, at *4-5; 20 C.F.R. § 416.927(d). Although the ALJ made reference to

these factors, and arguably considered the second factor of consistency, she did not mention

or discuss any of the other factors when analyzing Ms. Rollins' opinion. *See, e. g.,*

*Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's

decision need not include an *explicit discussion* of each factor, the record must reflect that

the ALJ *considered* every factor in the weight calculation.") [emphasis in original].

Instead, the ALJ declined to give Ms. Rollins' opinion controlling weight because it was

not supported by treatment notes, although he did not discuss which ones, then neglected

to discuss the remaining evidence. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th

Cir. 2004); *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002), *quoting*

Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains

an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). In doing so, the ALJ summarized Ms. Rollins' diagnoses, but provided no analysis, and ignored her statements about their treatment relationship, as well as her treatment notes reflecting both physical and mental impairments, summarized above. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Additionally, although the ALJ was not required to give controlling weight to Ms. Rollins' opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), she *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 416.927.

In addition to remanding for the above reasons, the Court further notes the claimant's assertion that the ALJ erred in the analysis of her subjective statements. At the time of the ALJ's opinion, the prevailing standard was that deference must be given to an ALJ's evaluation of a claimant's subjective symptoms unless there is an indication that the

ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A subjective symptom analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (*superseded by* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (effective Mar. 28, 2016)). The standard for evaluating credibility, as noted above, was then superseded by Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (October 25, 2017)). Regardless of which standard is applied, the ALJ's credibility determination fell below these standards.

First, the ALJ did not mention or discuss the factors set forth in Social Security Ruling 16-3p and 20 C.F.R. § 416.929, and further failed to apply those factors to the evidence.[2] She was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient, *See* Soc. Sec. Rul. 16–3p at *10, 2017 WL 5180304 (October 25, 2017), and here the ALJ did not even do that.

---

[2] The factors to consider in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms are:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *7-8 (October 25, 2017).

Additionally, some of the specific reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence in the record are not entirely supported by the record. For example, the ALJ found that the claimant had good response to medication, and referenced three of Ms. Rollins' treatment notes as support (Tr. 31). While it is true that the claimant reported improved symptoms at the appointments the ALJ referenced, there are also many treatment notes in the record where the claimant reported increased or persistent anxiety and/or depression while taking medication (Tr. 290, 299, 320, 347, 365). Similarly, the ALJ referenced Ms. Rollins' January 2014 treatment where the claimant attributed her "bad" low back pain to work she had been doing on a house in preparation for a move (Tr. 310). This single reference ignores that the claimant reported at least some degree of low back pain at every appointment she had with Ms. Rollins, both before and after January 9, 2014 (Tr. 290, 295). Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to her foregone conclusions and ignored evidence that did not support her conclusions. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, the ALJ appears to also rely on the claimant's daily activities as support for her credibility determination. Curiously, she noted that the claimant's husband does most of the household chores, which *supports* the claimant's subjective statements of disabling pain (Tr. 31). The ALJ then noted that the claimant reported that she was "scared of the

outside," but also reported that she goes outside (Tr. 31). This finding, at least in part, incorrectly represents the record because while the claimant did report going outside, she reported doing so just once per week (Tr. 191). [3] An ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'" *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993), *quoting Frey v. Bowen,* 816 F.2d 508, 516–17 (10th Cir. 1987).

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record and the claimant's subjective statements. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Although difficult to read, the claimant reported she goes outside on "Monday" (Tr. 191).